STATE OF MINNESOTA

IN SUPREME COURT

A24-0377

Court of Appeals                                                                                     Hudson, C.J.

American Family Insurance Company
a/s/o Nicholas Oelke,

                            Respondent,

vs.
                                                                                    Filed: July 22, 2026
NB Electric, Inc. dba                                                   Office of Appellate Courts
East Side Garage Doors,

                            Appellant,

Morningstar Remodeling, LLC,

                            Respondent.

_____

Jessica C. Richardson, Kelly Sofio, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis,
Minnesota, for respondent American Family Insurance Company.

Colby B. Lund, Jeffrey M. Markowitz, Rakiah B. Adams, Arthur, Chapman, Kettering,
Smetak & Pikala, P.A., Minneapolis, Minnesota, for appellant NB Electric, Inc. dba East
Side Garage Doors.

Taylor Brandt Cunningham, Bolt Law Firm, Anoka, Minnesota, for amicus curiae
Minnesota Association for Justice.

_____

1

For purposes of triggering the two-year statute of limitations for defective construction claims involving an improvement to real property in Minn. Stat. § 541.051, subd. 1, a property owner's termination of the construction contract with the general contractor constitutes "termination … of the construction or the improvement to real property."

Reversed.

## O P I N I O N

HUDSON, Chief Justice.

This case is about whether an action brought by American Family Insurance Company against NB Electric, Inc. and Morningstar Remodeling, LLC, is time-barred by the statute of limitations in Minn. Stat. § 541.051, subd. 1, which applies to defective construction claims involving an improvement to real property. The action arose from a home remodeling project for which Morningstar was the general contractor and NB Electric was a subcontractor whose electrical work allegedly caused a fire.[1]

The district court dismissed American Family's complaint based on the two-year statute of limitations in Minn. Stat. § 541.051, subd. 1, which specifies that a cause of action does not accrue "earlier than substantial completion, *termination*, or abandonment of the construction or the improvement to real property." (Emphasis added.) The district

---

[1] Morningstar participated in the appeal at the court of appeals but did not seek further review and did not file a brief in this court.

court concluded that American Family's claims were time-barred at the time the action commenced in July 2023 because the cause of action accrued no later than April 2021 when the homeowner terminated the construction contract with the general contractor. A divided panel of the court of appeals issued a decision reversing the district court's dismissal of the complaint. The court of appeals held that the phrase "substantial completion, termination, or abandonment of the construction or the improvement to real property" in Minn. Stat. § 541.051, subd. 1(c), refers to termination of the project as a whole, not termination of the construction contract with the general contractor. Thus, the court of appeals concluded that American Family's action was not time-barred because the home remodeling project had not been substantially completed, terminated, or abandoned when the homeowner terminated the services of the general contractor.

We hold—consistent with the district court—that for purposes of the two-year statute of limitations in Minn. Stat. § 541.051, subd. 1, terminating the contract with the general contractor for the construction or the improvement to real property constitutes "termination … of the construction or the improvement to real property." Accordingly, we reverse the court of appeals.

**FACTS**

In February 2020, Nicholas Oelke ("the insured") hired Morningstar to serve as the general contractor for a home remodeling project. According to the general contract, the scope of construction included electrical improvements: "The electrical portion of this project includes the house side of the new service and wiring for all appliances and

3

lighting." Morningstar subcontracted with appellant NB Electric to perform electrical work on the project.

On February 25, 2020, the City of Little Canada ("the city") issued a building permit to Morningstar. The building permit application described the work to be done as "Interior remodel. Roof alteration."

On July 29, 2020, during construction, a fire broke out at the insured's home and caused extensive property damage. According to the complaint, the fire occurred in part because NB Electric and Morningstar (collectively "the contractors") "utilized nonmetallic cabling … as opposed to the metallic cabling required by the plan specifications" and "failed to install no arc-fault circuit interrupters as required by the plan specifications." As a result of the fire, the insured submitted an insurance claim to respondent American Family Insurance Company. American Family was required to and did pay for damages resulting from the fire.

About a month after the fire, the insured discontinued the services of NB Electric. NB Electric performed no work on the home after the fire. Soon after March 8, 2021, the insured also discontinued the services of Morningstar. Neither Morningstar personnel nor its subcontractors performed any work on the insured's home after April 2021. Although the city had completed initial inspections on work performed by Morningstar and its subcontractors, no final inspections occurred because of the fire.

By February 2021, the insured had engaged Solid Rock Construction ("Solid Rock") as the new general contractor. Solid Rock's building permit application described the work to be done as "[d]emolition of fire damage, repair after demo, replace trusses

4

and roofing, finish walls, miscellaneous finishes throughout." Between May 5 and May 20, 2021, the city completed initial inspections on work done by Solid Rock and its subcontractors. On July 29, 2021, the city completed its final inspections and approved the work.

On July 31, 2023, American Family, as the insured's subrogee, commenced a subrogation action[2] against the contractors, asserting claims for negligence and breach of contract relating to the fire. *See* Minn. R. Civ. P. 3.01(c). NB Electric and Morningstar both filed motions to dismiss American Family's complaint pursuant to Rules 12.02(e) and 56 of the Minnesota Rules of Civil Procedure, based on the two-year statute of limitations for defective construction claims in Minn. Stat. § 541.051, subd. 1.

The district court granted the contractors' motions for summary judgment and dismissed American Family's complaint with prejudice.[3] The district court determined that American Family's claims were time-barred under Minn. Stat. § 541.051, subd. 1, because the claims accrued no later than April 2021—when the insured terminated Morningstar as the general contractor. American Family appealed.

---

[2]    "In the insurance context, [s]ubrogation involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor). The insurer stands in the shoes of the insured and acquires all of the rights the insured may have against a third party." *Getz v. Peace*, 934 N.W.2d 347, 351 n.2 (Minn. 2019) (alteration in original) (citations omitted) (internal quotation marks omitted).

[3]    "If on a motion asserting the defense that the pleading fails to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Minn. R. Civ. P. 12.02. Here, matters outside the pleading were presented and not excluded by the district court.

The court of appeals reversed the grant of summary judgment in a 2–1 decision. *Am. Fam. Ins. Co. v. NB Elec., Inc.*, 16 N.W.3d 837, 840 (Minn. App. 2025). In interpreting the language that triggers accrual of an action under Minn. Stat. § 541.051, subd. 1(c), the court of appeals held that the phrase "substantial completion, termination, or abandonment of the construction or the improvement to real property" refers to the project as a whole, not the termination of an individual contractor. *Am. Fam. Ins. Co.*, 16 N.W.3d at 839. The court of appeals concluded that "[b]ecause the construction project did not terminate upon the replacement of the general contractor, the cause of action had not yet accrued." *Id.* at 840.

NB Electric petitioned for review of the court of appeals' decision, and we granted review.

**ANALYSIS**

This case requires us to decide whether NB Electric is entitled to summary judgment on the basis that American Family's complaint is time-barred by the statute of limitations that applies to defective construction claims involving an improvement to real property. Whether NB Electric is entitled to summary judgment requires us to interpret the accrual provision of the two-year statute of limitations in Minn. Stat. § 541.051, subd. 1(c).

Summary judgment is appropriate if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.01. The interpretation of a statute is a question of law that we review de novo. *Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 880 (Minn. 2023). "When the district court grants

6

summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that we review de novo." *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006).

When interpreting the language of a statute, our primary goal is to ascertain and effectuate the intention of the Legislature. *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006). We first determine whether the language of the statute is ambiguous, that is, whether there is more than one reasonable interpretation of the text. *Scheurer v. Shrewsbury*, 24 N.W.3d 670, 674 (Minn. 2025). If the Legislature's intent is clear from the plain and unambiguous language of the statute, we do not engage in any further statutory construction. *Moore v. Robinson Env't*, 954 N.W.2d 277, 281 (Minn. 2021). But if the language of the statute is ambiguous, "we may resort to the canons of statutory construction to determine its meaning." *Vill. Lofts at St. Anthony Falls Ass'n v. Hous. Partners III-Lofts, LLC*, 937 N.W.2d 430, 435 (Minn. 2020) (citation omitted) (internal quotation marks omitted).

## A.

The statute at issue states in pertinent part that "a cause of action accrues … upon discovery of the injury, but in no event does a cause of action accrue earlier than substantial completion, *termination*, or abandonment of the construction or the improvement to real property." Minn. Stat. § 541.051, subd. 1(c) (emphasis added). The dispositive question here is whether "termination … of the construction or the improvement to real property" occurred when the insured ended the contract with the

7

general contractor Morningstar.[4] The answer to this question is not immediately apparent because the statute does not define "termination."[5]

Although we may look to dictionary definitions to determine the common and ordinary meaning of "termination," *see State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017), doing so here would be futile because dictionaries do little to resolve the parties' dispute. That is because the crux of the dispute is less about what "termination" means generally and more about when "termination" occurs in the narrow context of a construction or an improvement to real property.

To answer the question of when termination occurs under Minn. Stat. § 541.051, subd. 1(c), the parties offer two competing interpretations. NB Electric argues that "termination" means termination of *the contract* requiring the contractor to perform the construction or the improvement to real property. Thus, according to NB Electric, the cause of action accrued in April 2021 when the insured terminated the contract with Morningstar. Conversely, American Family argues that "termination" means termination of *the entire construction project*. Thus, according to American Family, because the home remodeling project continued after April 2021, with a new general contractor, the cause

---

[4]    Although NB Electric was discharged earlier than Morningstar, the parties do not argue that discharging a subcontractor triggers accrual under Minn. Stat. § 541.051, subd. 1(c).

[5]    The statute clearly states when "substantial completion" occurs, but it is silent on when either "termination" or "abandonment" occurs. Minn. Stat. § 541.051, subd. 1(a) (defining the "[d]ate of substantial completion" as "the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose").

of action accrued no sooner than July 29, 2021, when the construction project was substantially completed.

American Family also argues that NB Electric's interpretation is unreasonable because section 541.051, subdivision 1(c), makes no reference to "the contract" or "contractor." Although the statute makes no reference to a "contract" or "contractor," it is also true that the statute makes no reference to the phrase "the entire construction project." *See* Minn. Stat. § 541.051, subd. 1(c).

We conclude that the statute is ambiguous.[6] We have acknowledged that silence in a statute regarding a particular topic may render the statute ambiguous if the silence causes an ambiguity of expression resulting in more than one reasonable interpretation of the statute. *See Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010). Here, the silence of the statute on when "termination" occurs in the context of a construction or an improvement to real property creates an ambiguity of expression because it makes the statute susceptible to both NB Electric's and American Family's

---

[6]     The court of appeals and American Family rely on *Moore v. Robinson Env't*, 954 N.W.2d 277 (Minn. 2021), to contend that the statute is not ambiguous. But this reliance is misplaced. In *Moore*, we interpreted the phrase "performing … construction of the improvement" in section 541.051. 954 N.W.2d at 282 (alteration in original) (concluding that the phrase "performing … construction of the improvement" means construction of the entire project). Significantly, unlike *Moore*, the contractors in this case were *terminated*. *See id.* at 279. Because there was no termination in *Moore*, our judicial mind was not focused on the question at the crux of this case: what effect does the termination of the general contractor have on accrual of the cause of action under section 541.051? *See In re Krogstad*, 958 N.W.2d 331, 337 (Minn. 2021) (quoting *Fletcher v. Scott*, 277 N.W. 270, 272 (Minn. 1938)) ("[S]tare decisis applies only when 'the judicial mind has been applied to and passed upon the precise question.' ").

9

reasonable interpretations. NB Electric's interpretation is reasonable because the contract between the property owner and the general contractor defines the scope of the construction, and thus the termination of that contract can be understood to be a termination of the construction. American Family's interpretation is also reasonable because a property owner can continue construction with a new general contractor despite terminating the contract with the initial general contractor.

Furthermore, even if we accept American Family's argument that termination applies to *the entire construction project*, ambiguity persists. "The entire construction project" has two reasonable interpretations because its meaning lies in the eye of the beholder: from a homeowner's perspective, the construction project continues until substantial completion regardless of termination of contractors; from a general contractor's perspective, the construction project effectively terminates when the general contractor is terminated.

Because we conclude that the statute is ambiguous, we may go beyond the language of the statute to determine legislative intent.

B.

Having determined that Minn. Stat. § 541.051, subd. 1(c), is ambiguous, we turn to the canons of construction. *See Vill. Lofts at St. Anthony Falls Ass'n*, 937 N.W.2d at 435. In doing so, we consider, among other factors:

> (1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the

10

contemporaneous legislative history; and (8) legislative and administrative interpretations of the statute.

*Sleiter v. Am. Fam. Mut. Ins. Co.*, 868 N.W.2d 21, 27 (Minn. 2015); *see also* Minn. Stat. § 645.16.

We begin with the circumstances that gave rise to the statutory language now at issue. In *328 Barry Avenue, LLC v. Nolan Properties Group, LLC*, 871 N.W.2d 745 (Minn. 2015), we considered whether the statute of limitations for defective construction claims under the prior version of Minn. Stat. § 541.051, subd. 1 (2014), could begin to run before substantial completion of the construction. At the time we decided *328 Barry*, the only trigger for the two-year limitations period was "discovery of the injury," and no exception existed for injuries discovered before substantial completion of the construction. *See* Minn. Stat. § 541.051, subd. 1(c) (2014). We held that "the plain language of Minn. Stat. § 541.051, subd. 1(a), does not require that construction be substantially complete before defective construction claims accrue." *328 Barry*, 871 N.W.2d at 751. Three years later, the Legislature amended Minn. Stat. § 541.051. *See* Act of May 8, 2018, ch. 116, § 1, 2018 Minn. Laws 50, 50 (codified as amended at Minn. Stat. § 541.051, subd. 1(c)(2)). The amendment added the following language to subdivision 1(c): "for an action for injury to real or personal property," a cause of action under subdivision 1(a) begins to run "upon discovery of the injury, but in no event does a cause of action accrue earlier than substantial completion, termination, or abandonment of the construction or the improvement to real property." *Id.* This amendment was a direct response to our holding in *328 Barry*. *See* Sen. debate on H.F. 2743, 90th Minn. Leg.,

11

May 2, 2018, at 31:28–32:19 (video tape) (statement of Sen. Newman) (citing to our holding in *328 Barry*, highlighting the problem caused by the holding and explaining how the amendment solves the problem); *see also* House debate on H.F. 2743, 90th Minn. Leg., Apr. 25, 2018, at 8:04–9:03 (video tape) (statement of Rep. Smith) (same).

The principal proponent of the bill was the Minnesota State Bar Association (MSBA). Hearing on S.F. 2468, S. Comm. Judiciary and Pub. Safety Fin. and Pol'y, 90th Minn. Leg., Feb. 26, 2018, at 24:00–24:08 (video tape) (statement of Sen. Newman). The MSBA framed the problem raised by the court's holding in *328 Barry* as follows:

> **Problem:** Longer construction projects can last several years. If an injury to property is discovered relatively early in the project, parties are forced to initiate legal action before construction is complete simply to protect their rights, even if every party expects and agrees that the damage will be repaired before substantial completion.

Hearing on S.F. 2468, S. Comm. Judiciary and Pub. Safety Fin. and Pol'y, 90th Minn. Leg., Feb. 26, 2018 (exhibit of Minn. State Bar Ass'n). The MSBA also proposed a solution, which was ultimately the basis of the language in subdivision 1(c)(2):

> **Solution:** This bill starts the statute of limitations running at discovery of the injury, but in no event before substantial completion, termination, or abandonment of the project.

*Id.*[7] The problem raised by the MSBA is the problem that the Legislature intended to solve with the amendment to the statute. *See* Sen. debate, Sen. Newman, at 31:58–32:18 ("This bill is a solution which delays the statute of limitations from starting.… This will

---

[7] The bill that enacted the MSBA's proposed solution passed with unanimous, bipartisan support. *See* 9 Journal of the Senate 8528 (90th Minn. Leg. May 2, 2018); 8 Journal of the House of Representatives 9263 (90th Minn. Leg. Apr. 25, 2018).

allow parties to avoid unnecessary litigation when they all agree a problem exists and will be fixed before the project is completed."); House debate, Rep. Smith, at 8:40–9:02 (repeating Sen. Newman's statement). Construing "termination" as applying only when the entire construction project has been terminated, however, does nothing to further the stated purpose of avoiding unnecessary litigation when all agree a problem exists and will be fixed before the project is completed. If the general contractor is terminated after a problem is discovered and a new general contractor is hired to complete the project, delaying the statute of limitations until substantial completion with the new general contractor would not avoid unnecessary litigation when suit would still lie against the original general contractor, not the second general contractor who may have fixed the problem.

Furthermore, the legislative history indicates that the Legislature intended for termination to be linked to the contractual relationship. *See* Sen. Hearing on S.F. 2468, at 26:20–26:35 (comments of Dean Thompson, Member of MSBA's Construction Law Section) ("[T]he section is proposing that we run the statute of limitations no earlier than the date of substantial completion, or abandonment of the project, or termination of *the contract in question*.") (emphasis added); Hearing on H.F. 2743, H. Comm. Civ. Law and Data Practices Pol'y, 90th Minn. Leg., Feb. 22, 2018, at 27:27–27:37 (audio tape) (comments of Scott Andresen, member of MSBA's Construction Law Section Council) ("[S]ubstantial completion of the project, abandonment, or termination. Those are all

terms of art within the construction industry and within the contract."[8]). Untethering the "termination" language in subdivision 1(c)(2) from the contractual relationship is inconsistent with the legislative intent because it would delay accrual even where there is no expectation or agreement that the defect will be remedied.

Finally, we consider the consequences of the different interpretations of the statute. *See* Minn. Stat. § 645.16(6). Under American Family's reading of the statute, a construction or an improvement to real property might never be terminated or abandoned; even if the property owner fires their general contractor and stops work on the project, the construction would only be paused and may be restarted if or when the property owner decides to hire a new general contractor to complete the work. Essentially, subsequent substantial completion voids termination or abandonment. If subsequent substantial completion of the construction or the improvement to real property voids termination or abandonment, as implied by American Family's interpretation of the statute, the prescribed limitations period under section 541.051 virtually disappears in situations

---

[8]     The legislative history indicates that "termination," as used in the statute, is a technical word. *See* House hearing, Scott Andresen, at 27:27–27:37. Although we generally construe words and phrases according to rules of grammar and according to their common and approved usage, we construe technical words and phrases and such others as have acquired a special meaning, according to such special meaning. Minn. Stat. § 645.08.

In construction law, "termination" is a contractor-specific term of art that refers to the termination of a construction contract, typically pursuant to a termination provision in a contract. *See, e.g.*, *Blaine Econ. Dev. Auth. v. Royal Elec. Co.*, 520 N.W.2d 473, 476–77 (Minn. App. 1994) (discussing in detail a contractor's termination pursuant to a contractual termination provision); *Roberts v. Baumgartner*, 391 N.W.2d 545, 548 (Minn. App. 1986) ("In the subcontracts, the word 'termination' appears only in relation to the conclusion of the agreement by the action of the parties.").

14

where a contractor is terminated and the property owner never hires another contractor to complete the project, delays hiring another contractor to complete the project, or subsequently hires another contractor who drags out substantial completion of the project. For the terminated contractor, such as the contractors here, the accrual of the prescribed limitations period would be at the whim of the property owner, who may or may not continue the project with a different contractor, at a pace unknown to and out of the control of the terminated contractor. Such a result cannot be reconciled with the legislative intent and is manifestly contrary to the purpose of statutes of limitations—to ensure that "defendants are aware of the claims against them in reasonable time frames." *State of Minn. Off. of Att'y Gen. v. Madison Equities, Inc.*, 29 N.W.3d 700, 713 (Minn. 2026); *see also Moore*, 954 N.W.2d at 282 n.5 ("The purpose of the statute of limitations in section 541.051 is to limit liability exposure for contractors.").

American Family argues that adopting NB Electric's interpretation would require a property owner who hires a general contractor to know every subcontractor working on the project, the scope of their contribution to the project, and precisely when their specific contribution was completed or when they were otherwise no longer working on the project. But that is not the case. The property owner need only know the status of the general contractor with whom the property owner has a contractual relationship.

American Family also argues that its interpretation "promotes uniformity, predictability, and timely resolution of disputes in the construction industry." We disagree. American Family's argument ignores the fact that the phrase "entire construction project" is inherently fluid and highly subjective. A project's scope is often

15

ambiguous, particularly when a property owner undertakes successive, distinct construction efforts over several years, or when a single project is broken into multiple, consecutive phases. In both cases, it can be difficult to determine whether the work constitutes one continuous project or a series of separate projects. Determining whether a later phase belongs to the same project or constitutes a new one depends on the parties' intent, contractual language, and the evolving work history—factors that vary from case to case. By tying accrual to a construct that shifts with each dispute, American Family eliminates the very uniformity and predictability it claims to promote.

The canons of construction support NB Electric's interpretation. Accordingly, we hold that for purposes of the two-year statute of limitations in Minn. Stat. § 541.051, subd. 1, terminating the contract with the general contractor for the construction or the improvement to real property constitutes "termination … of the construction or the improvement to real property." We therefore reverse the decision of the court of appeals and reinstate the district court's dismissal order.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed.